Good morning, Your Honors. May it please the Court, my name is Mark Dangerfield. I'm appearing on behalf of Gallagher & Kennedy, whom I'll generally refer to as G&K. I'd like to reserve three minutes for rebuttal here. This appeal focuses on the meaning of the word incurred in CERCLA Section 107A and how it should be construed to further the objectives of CERCLA. And specifically, the issue is whether G&K incurred response costs, first, when it committed its own time and resources to the RID remediation, and second, when it supervised the response work of others that G&K is obligated to pay for if it recovers those costs. And I'd like to briefly discuss this issue. Can I interrupt you with a question? Certainly. I gather from the briefing and from the statement that you just made that the record does not show that G&K actually paid its own money towards any of the remediation. Is that a correct understanding? Not quite, Your Honor. There are two different issues. G&K devoted its own time and resources. In other words... I understand that time and resources. I'm asking about whether the funds, the project funds, for example, whether G&K paid any funds, money, into that fund or otherwise had money, an outlay of money. So the first issue on G&K's direct costs, it simply devoted its own time and resources To manage the subcontractors and manage the cleanup.  But there's a project fund that how much money did the project fund, and Judge Graber's asking you, did G&K put any money into the project fund? Correct. G&K did not put any money into the project fund other than the funds that it was collecting. In other words, the project fund didn't magically appear. G&K had to go out, and there were settlements that were negotiated and funds that came in, but G&K didn't take... They came in from other polluters, right? Well, other polluters and other sources as well, but... How much came into the fund? Total? Yes. I'm not sure the answer to that. It was about $2 million, I believe. Okay, but none of that's G&K money. G&K didn't take law firm money, let's put it that way, and put it into that fund. Okay, and the project fund money's all been paid out. It has, yes. And G&K says it spent about $8 million administering all the cleanup so far, right? That's correct, Your Honor. And the total cleanup is... About $20 million. $21 million or $20 million? It's $21 million and some change. Okay, and so we've run out of project money, right? That is correct. And so G&K wants its $8 million. G&K wants its $8 million and wants to collect the money that it will then pay out to the subcontractors for the other $12 million. And there are bills pending. There are subcontractor bills pending, but not... Correct. Okay. Can you clarify as far as G&K's own time and resources exactly what you did? Because we're looking at Keytronic and having to decide, is this more sort of akin to sort of litigation expenses or is this actually tied to the cleanup itself? And I can't quite tell from the declaration of David Kimball exactly what you did. Well, let's start with this to simplify it. None of it is litigation time. And, in fact, as the district court noted, for this appeal, the defendants are not asserting that they're not challenging that all of that $8 million was, as required by the statute, both necessary and consistent with the National Contingency Plan or the NCP. So that's kind of a given for this appeal. I'm sure they'll challenge it if the case goes back down. You're saying they do not challenge that it was closely tied to actual cleanup? That's exactly right, Your Honor. But what did you do because the declaration is vague? Over a period of 10 years, G&K, actually a little more than 10 years, G&K supervised the entire project. G&K had control over the entire remediation project. So it hired subcontractors. Some of those subcontractors were hired directly with G&K as the actual hirer. Some were contracted by G&K on behalf of RID. But, in any event, G&K signed all of those agreements, found the contractors. They assisted in interacting with the Arizona Department of Environmental Quality, ADEQ. But under Keytronic, that wouldn't be covered. That wouldn't count as closely tied to actual cleanup. No, I don't think that's quite right, Your Honor. It wouldn't be. The time that they spent, if they spent, what Keytronic says is, if you spend time negotiating a consent agreement with the government, that's not. That time doesn't count. But time involved with helping work out the plans. So your position is that G&K's own time, effort, and resources could come under Keytronic. Exactly, Your Honor. And that's not an issue here. My major point is they are not challenging that it wasn't. And so this Court doesn't have to worry about that. That's not an issue for this appeal. Well, let's take you over to Chubb Custom Insurance Company v. Space Systems. Sure. That basically says, reimbursement of the costs of others was insufficient to find a party had, quote-unquote, incurred. We're interpreting the words incurred costs under CERCLA. Hasn't the firm simply reimbursed the subcontractors for their work? Well, the reason Chubb doesn't apply here, the facts in Chubb were that the contractor or the owner did the remediation work, but they didn't sue. Chubb sued because it had paid for the work. And the court found that Chubb itself had not done any of the remediation. It was simply looking to collect the money that it paid not for remediation, but to reimburse its policyholder. It was an insurer. Those facts aren't the facts here. Okay. So then you've got Trimble v. Asarco that suggests that contingent costs are too speculative to qualify as, quote-unquote, incurred costs. So what case most strongly supports your position that your contingent obligations are non-speculative? The reason these costs aren't speculative is that they already are done. We know exactly what the costs are. Nobody is speculating. We have produced in discovery, and the defendants have had a chance to examine every single penny of what was spent by both G and K and the subcontractor. It's not speculative. I'm sorry. Can I – I want to clarify one other thing. You have pending invoices, which you just referred to, but as I understand it, again, correct me if I'm wrong, you are not under a current – or G and K is not under a current legal obligation to pay those invoices. Is that correct or not? G and K is legally obligated to pay those invoices if it collects the money. Okay, so it's contingent. It's contingent. They're not currently obligated. That's right, Your Honor. The issue, which focuses the issue here, the meaning of – and that's what I indicated at the beginning. The case is about the meaning of incurred. But also, a follow-up question to that, if the money is collected to pay the invoices, that money will not have belonged to G and K. They're essentially going to be a pass-through. Is that correct? Let me make sure I understand your question. If G and K – The contingency is that they have to collect – there has to be more money to pay those invoices, right? Right. But that money is not G and K's money. It's coming from another source, the project fund or other entities. And so I guess I'm asking whether that is a correct understanding, that it would not be out of G and K's pocket directly. Well, see, that depends on how you define G and K's money. G and K is in charge of the project fund monies. Well, okay, but the project money is gone, okay? And my understanding is that if the project money runs out, G and K is not under any obligation to pay these subs. Is that right? G and K is under an obligation to pay if it recovers. If you get money in the project fund. Right. And Judge Graber keeps pressing you that G and K did not put one penny into the project fund. You've managed collecting people to put money into it. You've spent your time managing all these projects, but in the project fund there's not any of your money, right? I believe that the project funds are G and K's money. They're nobody else's money. The fact that G and K obtained them from another source, all businesses get money from another source. You could pay yourself from the project fund before you paid any subcontractors, and you can't do that, right? I guess I didn't quite understand that question. Well, you said the project fund is your money, but if it were your money, you could just pay yourself. But the reason you're asking us to say that you can be paid under CERCLA is because it's not your money. Well, but CERCLA entitles us to recover the cost that we have incurred. So that gets us back to what is the meaning of incurred? But your fee agreement says that if the project fund is insufficient, which you conceded this morning, you bear the risk of not getting paid, and that's true of the subcontractors. All of you bore the risk that if the project fund was insufficient, you wouldn't get paid. So what are we to do with that fee agreement language that you agreed to? Well, Your Honor, we are not suing under the fee agreement. We are suing the defendant PRPs under CERCLA, Section 107A. And under CERCLA, we're allowed to recover regardless of a contract. There is no CERCLA defense that says, oh, you've got a contract that says otherwise. And in fact, what CERCLA does say, CERCLA 107A says that a PRP's liability under the CERCLA is subject only, I'm quoting the statute, only to the three defenses set forth in subsection B. Well, we're taking you into your rebuttal time, which I don't want to use up unless my colleagues have questions. No, thank you. Okay. Let's leave it with, and you can think about this, if it would appear that there's no case exactly on point for either of you here. So would it be your position that whatever this Court decides probably needs to be published because there really isn't anything in any other circuit or the Ninth Circuit that actually answers your question directly? Is that correct? I think it is a matter of first impression for this Court, yes. Okay. So I'm going to, we've used a little bit of your time, but I'm going to give you three minutes for rebuttal. All right? Thank you, Your Honor.  All right. So we'll hear from Mr. Thomas, and you have 10 minutes. Good morning. May it please the Court, Chris Thomas, counsel for the City of Phoenix, and also on behalf of the other two defendants here. With me is William Pearson from the Pearson Law Group, who is counsel for Maricopa County. He's going to take five minutes. And joining us virtually is John Condry, who is counsel for Prudential Overall Supply. And are you and Mr. Pearson splitting up subject matter? We are splitting up time, and he's going to bat cleanup in case I bungle something along the way. Okay. Got it. So we can ask you anything we want? You can. Okay. If I answer poorly, then Mr. Pearson will correct me. I think the Court has already identified the key issues here, and let me clear up some of the factual questions. First, what Gallagher and Kennedy is seeking here is a combination of approximately $2 million routed through the project funds account and paid to the subcontractors. That was money paid by third parties, and Gallagher and Kennedy did not contribute a penny to that account. Do you agree this is an issue of first impression? I do. So let's, since we're kind of focused on this, let's just jump to, you appear to be arguing that no one has, quote, unquote, incurred costs in this situation, which I think seems incorrect, given that cleanup has occurred. So given the subcontractors' expended money by performing the cleanup work, did they incur costs such that they could bring cost recovery suit against the city or other responsible parties? Your Honor, that goes to an issue addressed by G&K, and its reply where it argued that we should be judicially estopped from asserting that Gallagher and Kennedy did not incur within the meaning of CERCLA costs put out by Spinnaker and Synergy, the subcontractors. The record indicates that those two entities, after Judge Ezra, as you may recall, ruled that Roosevelt Irrigation District, the nominal client here, did not incur costs that had no- But a cleanup has occurred, right? Some mass was removed sporadically at the expense of Spinnaker. Synergy also invested sweat equity, much like Gallagher and Kennedy in the project. But let me point out that- But you get some benefit from that, and then you want to deny them benefit. We would disagree, as the water provider in the Phoenix metro area, that any benefit was provided to anyone by these sporadic removal efforts. But nevertheless, let me point out that Spinnaker and Synergy did file a lawsuit themselves, seeking to recover what they had expended. Gallagher asserts that we should be stopped from alleging that Gallagher incurred those costs. That's incorrect. At the time that the parties argued to the court in 2018 that the Spinnaker and Synergy costs were not yet ripe, the RID lawsuit had not yet been concluded. In addition to that, Roosevelt Irrigation District was continuing its efforts to sell water, which would have replenished the project funds account and made funds available to pay those other vendors. Well, let me ask you a hypothetical. I have a question, too. Go ahead. I'm sorry. Go ahead, Judge Graber. You used the phrase sweat equity, and G&K, I guess, uses a more refined term, but they actually spent time and work on making sure that remediation occurred, whether it was complete or satisfactory is a different question. But they did, in fact, spend their time on that, about $8 million worth, according to them. Why isn't that a form of incurring costs to make remediation happen? There's no statutory definition of incur. And so why isn't that a form of expenditure that can be reimbursed by the polluters? Well, first off, Keytronic obviously holds that litigation-related attorney's fees. There's no fee-shifting position. This is not all litigation. I'm asking about the part where they were managing the actual remediation and the subcontractors. I agree with you on legal work, but this wasn't all legal work. So as to the things that were not legal work or litigation-related specifically, why isn't that a cost incurred? There's no case that holds that a law firm can effectively become its own client by conducting work at an impacted site. But there's no case that says what incurred means either. So that's what they're arguing one thing, you're arguing another. We are indeed. But let's look at what they did. G&K and its consultant, Synergy, performed well investigations and prepared a well investigation work plan that was submitted to ADEQ. I don't see how you can do remediation without the work that they did. G&K and its consultant, Synergy, prepared a public health exposure and mitigation work plan. If you don't have those work plans that will lay out how to do the remediation, you can't have remediation. So I just don't understand how these aren't necessary costs for the cleanup. And we can just go through the whole list. It's not litigation. It's preparing the plan to how to pump and treat the contaminated groundwater. Judge Covey, first off, the sporadic remediation efforts were abandoned in 2020 after the project funds account was exhausted and RID settled its water rights case with the Bureau of Reclamation, which included a provision prohibiting the irrigation district from selling water for drinking water purposes. That basically killed off the source of revenue that Gallagher and the other joint ventures had anticipated would produce project funds and profit. But that's not an answer to my question. That's not an answer to my question. How could you do remediation without the work plans that GNK and the subcontractors created to actually guide the cleanup? Your Honor, certainly a work plan is a regular part of a circular response. The work plan was drafted by Synergy. Presumably Gallagher made some comments on it. But, again, with respect to the necessity of those efforts and the consistency with the NCP, those were not at issue in the motion below, which was limited to the incurred cost issue. So whether or not they're necessary is not something for this court to decide and was not something given as much as us. Well, this was a motion for summary judgment, so at a minimum there's a factual material dispute, right, as to whether these GNK costs and these subcontractors, GNK costs, let's just limit it to GNK, are necessary for the cleanup at a minimum. I mean, it sounds like you conceded that they actually were necessary for the cleanup. That's not correct. We did not concede the necessity and reasonableness of any cost because the only issue addressed in this motion. No, that's not the question. But if you're not going to concede it, we can move on. I have another question, too, because you've said several times that the remediation was incomplete, it was abandoned, and so forth. Does that have any legal effect with respect to the remediation efforts that were, in fact, completed, whether they were good or bad? I don't understand the circle to say, well, it has to be complete for it to be an incurred cost. Your Honor, I think it does reflect on whether this is the appropriate case to extend the definition of incurred from other cases such as Chubb and Trimble. That's not an answer to my question. Does the statute require, in your view, that a remediation be complete or satisfactory in order for costs to be incurred with respect to the remediation that was done? Well, certainly CERCLA allows parties to seek cost recovery after an initial phase of costs have been incurred before the remediation is entirely complete. Let me ask you a hypothetical, that if Gallagher and Kennedy was liable on a non-contingent basis to pay the subcontractors for their work, would you agree that the firm had incurred costs? That would bring them much closer to the existing case law that says that you have incurred costs. So maybe yes? Maybe yes, but that's not the case here. Let me tell you what I have a concern about. In this case, if the district court is affirmed, then the parties that actually caused the contamination will be receiving the benefit of at least some remediation, which you can see whether it was abandoned or completed or not, some remediation was done, and the parties who had no role in causing the contamination will be stuck with the bill. I just don't see how that's consistent with the purpose of CERCLA. Well, there are a variety of purposes of CERCLA, including encouraging appropriate cleanup under supervision. So how would that encourage cleanup? If other parties, subcontractors, law firms, see this case and see you can do a lot of remediation and you will not get reimbursed, how does that encourage cleanup? Why is that consistent with the statute? Your Honor, it may discourage other parties from entering into this, as far as we know, unusual and unprecedented agreement, but that would hardly be inappropriate because CERCLA is not intended to basically violate the common law on subrogation. Price and other cases hold that it's not a vehicle for subcontractors to seek recovery directly from potentially responsible parties. I see that I am just about out of time. Ed, do either of my colleagues have any additional questions? No, thank you. I'm going to turn it over to Mr. Pearson. All right. Thank you. And he has five minutes. Okay, so you're the relief pitcher here, so any questions that maybe you don't think were answered, go for it. All right, I'll do my best. May it please the Court, my name is William Pearson. I represent Maricopa County along with the City and Prudential. Well, why don't you start with where Judge Koh left off in terms of because obviously we want things to be cleaned up and it would seem there's a good argument can be made that your interpretation of incurred allows polluters to have the benefit and other people that are working for cleanup, they can't claim that they've incurred costs. Could I answer two of the first questions and then come back? You can answer what I asked you and then you can answer what you want. All right. The answer is it certainly sets up a whole structure for cleaning up sites, and part of that structure is that a party who is going to do a cleanup signs an agreement with a government who has obligations under that agreement, penalties for not performing that agreement, provides that they pay the vendors who do the work to ensure that the work continues, and EPA requires them to provide financial assurance that they will complete the project. None of that happened here. So the subcontractors could go after you then? You would agree to that? Well, subcontractors arguably could come after us if they did, but they didn't. In this case, the only party before the court is plaintiff G&K. Spinnaker, Synergy, they're not before us. They're not parties here. Well, I know, but when you argue something, the courts, like a logical scheme, I think what Judge Koh is saying, you shouldn't get to free ride on this. So if you say G&K doesn't get it, then would logically the subcontractors, if they sued for whatever they performed, would they be able to get it from you? In that framework, if they did the work and that work was paid for, they could bring their action. So who should pay them? Who's the responsible party that should pay the subcontractors? The party who hired them, because that's the dispute between the performing party and the party who hired the entity, the vendor, to do the work. And there's a relationship there, and CERCLA assumes there's a relationship there. And so that if the performing party hires a vendor like Spinnaker, like Synergy, to do work, or like G&K to do work, then that party is obligated to pay. That's the longstanding case precedent on incurring costs under CERCLA. If they don't pay or have no obligation to pay, then the vendor is not paid. And that's the risk that the vendor took in entering a relationship with a performing party. They knew what they were getting into, and if there's a dispute, then they should have a dispute with the performing party. CERCLA does not provide a direct action for a vendor who is unpaid to then bring their own action back in a CERCLA case, because the vendor hasn't gone through and performed the cleanup as would be normal in the circumstances. Let me respond to two quick questions. One is on project funds. G&K put no money in project funds. There was a little over $2 million in that from other sources. G&K does no ownership rights over that. It was put in their trust account, and they paid it out. Let me ask you another question. Why shouldn't a Morrison and Ninth Circuit case apply here that says if you incur fees, even if you're only obligated to pay them in the event you're able to recover? Well, Morrison is a piece-shifted case. And the IRS code provides for a prevailing party to be awarded the funds or litigation costs if they are able to establish some other issues as well related to the IRS code. That is not the case here. CERCLA does not provide a fee-shifting provision. Some of the other environmental statutes have citizen-suit provisions where you can get your litigation fees, but Morrison is clearly not applicable here for that reason. Okay, you have less than a minute, but I'll give you an extra minute to answer the question we didn't ask you that you want to answer. Okay. I would ask the Court to step back for a minute and understand what happened here. This is not a cleanup project. This was a high-risk joint venture organized by Gallagher and Kennedy in order to make a zillion dollars in selling drinking water. That venture collapsed. When that collapsed, G&K now goes, now we need to look to CERCLA, invoke CERCLA, to see if we can get our money that we lost. Well, so that collapsed because they were going to sell water that wasn't potable to agriculture or something, and then they didn't get to do that, so they didn't make money off selling water during the period. Is that your point? Right. All the money was going into project funds, and that's where all the parties expected to be paid. So when the drinking water scheme collapsed, there was no money in the project funds, and so G&K looked around and said, well, let's see if we can get our contribution in a joint venture paid out through CERCLA. They never agreed to do the cleanup. They never put any money into the cleanup. They walked away as soon as the drinking water scheme failed, and the state agency had GRID withdraw the cleanup plan. What case law says that your motivation to make a profit means you can't get reimbursed under CERCLA? I guess I don't see the relevance of this other than you're trying to make G&K look like greedy actors. I don't know. What's the legal significance of this history? The case law is pretty clear. Ultimate motivation for doing the work is not relevant. So the only reason I'm bringing it up, it gives an explanation for how this whole process occurred and gives an explanation for why G&K should not be able to claim that they are a compliant partner. Well, you're saying that's why the scheme did not work. That's why the scheme did not work. But because of that, that then shows that this is not a contingency fee agreement. This is a joint venture agreement, and that shows why they did not follow normal CERCLA steps in order to be a compliant CERCLA plaintiff by signing an agreement to do the work. Our position is if you're going to be able to be paid for having incurred costs, you have to be in line with what a CERCLA compliant plaintiff would do. You can't just go out there with a backhoe and dig up some dirt and take it off and dump it somewhere and then bring a cost recovery action. So the last – Well, I've given you extra time. You did, Your Honor. I appreciate it. So 30 seconds to wrap it up. Okay. Don't test me. Okay. My last comment is Judge Ezra looked at these issues three times, and he issued three detailed decisions. They're all well written, looked at all the case law that we have in front of us, and he came out with a dismissal of the G&K claims. And we believe those are well reasoned. This case has gone on for 14 years, and we think it's time to terminate the litigation and affirm the district court's decision. Okay. Thank you for your argument. Thank you. All right. Three minutes for rebuttal. Thank you, Your Honor. I want to go back to the statute, the language of the statute, for just a minute if we could, because I think that's really the thing at issue here. And I want to make two points. First of all, incur. That word, as you know, is undefined in the statute. And incur thus takes its ordinary meaning. Well, the ordinary meaning of incur, according to the various dictionaries, is to become liable for or subject to. It does not mean to actually pay for. What I just said was a quote from the Quarles Petroleum case, a court of claims case that we've cited in the briefs. And when you look at the meaning of incur, or when you look at the meaning of to become liable for or subject to, that's a vague phrase. But it's broad enough to include both absolute liability and contingent liability, as this court determined in the Morrison case. Now, let me talk about the Morrison case for just a minute. Well, but if the selling water had worked out, we wouldn't have to be here, right? You would have gotten paid. I suppose that's the case, but that's completely irrelevant, because the question is, did we incur costs under 107A? Selling water has nothing to do with it. Well, but that's how, but if that had happened, we wouldn't be here. That caused a problem. I don't even know if that's true or not, Your Honor. That's a complicated issue, the selling water. Well, for $21 million of cleanup to only have $2 million in the profit in the project management, you can do the math there. There's a problem. Well, G&K was dependent on this lawsuit, on CERCLA 107A. That's how people do recover costs. For example, in the OHM case that we've cited, the remediation contractor itself put in millions of dollars of work for which it didn't get paid. In that case, its principal simply went away and didn't pay it. So what's its option? It has the option of suing under this same statute, and it did that, and the court said, yes, you can recover the cost you personally expended there. So in determining the meaning of incur, the court has to look at the policy underlying CERCLA, just as the court in Morrison looked at the policy underlying the statute at issue there. And when you look at that policy, the intent of the statute is clearly to promote the effectiveness and the ability to get remediation done. So basically you've used your time, but since I try to keep things equal, you've got a minute to wrap everything up. Okay, Your Honor. Let me wrap up with the big picture. The big picture is this. G&K came up with a creative way to get remediation done, to help remediate the RID-contaminated wells that were contaminated by the PRPs, our defendants here and others. Came up with a creative way to do that because RID had no money itself to do it, and there was no government agency that was stepping forward. So G&K stepped forward and over a period of ten years did all the things, some of which we've discussed in the briefs, to ensure that this could get remediated. It didn't entirely work out, but billions of gallons of contaminants were successfully removed and treated at the RID wells. G&K didn't cause any of that, but G&K and the subcontractors should be reimbursed for that. Otherwise, the PRPs go free, and that would turn the objectives of CERCLA on its head. We ask you to reverse, Your Honor. Okay, thank you for your argument. Thank you both for your arguments. This matter will stand submitted. Thank you.
judges: GRABER, CALLAHAN, KOH